UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DONALD G. LILLY,

                Plaintiff,

      -vs-                                          01-CV-329C

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.

---

Plaintiff Donald Lilly initiated this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Social Security disability ("SSDI") benefits. The Commissioner has filed a motion for judgment on the pleadings, and the plaintiff has cross-moved for the same relief pursuant to Fed. R. Civ. P. 12(c). For the following reasons, the Commissioner's motion is denied, plaintiff's cross-motion is granted, and the case is remanded for further proceedings in accordance with this decision.

## BACKGROUND

Plaintiff was born on April 2, 1946 (T.106).[1] He applied for SSDI benefits on November 7, 1997, with an alleged disability onset date of September 28, 1996 (T. 106).[2] He alleges disability based on "several back conditions, intellectual deficits, hearing loss

---

[1] References preceded by "T." are to page numbers of the transcript of the administrative record filed by defendant as part of the answer to the complaint (Item 6).

[2] Plaintiff also applied for SSDI benefits in 1995, alleging disability since a 1993 injury. After a hearing before another ALJ, his application was denied on September 27, 1996.

and rotator cuff tendonitis" (Item 21, p. 1). Plaintiff's application was denied initially on March 5, 1998 (T. 74), and upon reconsideration (T. 79). Plaintiff requested an administrative hearing, which was held on June 9, 1999 before Administrative Law Judge ("ALJ") Nancy Lee Gregg (T. 25-45). On August 26, 1999, the ALJ determined that plaintiff was not disabled and not entitled to SSDI benefits (T. 8-23).

The ALJ's decision became the Commissioner's final determination on March 9, 2001, when the Appeals Council declined plaintiff's request for review (T. 5-6). On May 7, 2001, plaintiff instituted this action seeking judicial review of the Commissioner's final determination (Item 1). The Commissioner filed an answer on September 7, 2001 (Item 6). In an order dated January 17, 2002, the court remanded the case to the Commissioner for the purpose of locating certain evidence missing from the record (Item 13). The Commissioner filed a supplement to the answer on February 14, 2002 (Item 15), and moved for judgment on the pleadings on April 9, 2002 (Item 16). Plaintiff filed a cross-motion for judgment on the pleadings on June 6, 2002 (Item 22) on the grounds that the decision is not supported by substantial evidence and that the ALJ committed errors of law.

## DISCUSSION

**I.   Scope of Judicial Review**

Under the Social Security Act, a person is entitled to Social Security disability benefits when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(3)(A); *Melville v. Apfel*, 198

F.3d 45, 50 (2d Cir. 1999).  Such a "physical or mental impairment" must be supported by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(C).  Determinations of severity are based on objective medical facts, diagnoses, or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience.  *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983); *Fishburn v. Sullivan*, 802 F. Supp. 1018, 1023 (S.D.N.Y. 1992).

The Act states that, upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . . "  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson,* 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel,* 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews,* 418 F. Supp. 1139, 1141 (E.D.Wis. 1976),

quoted in *Gartmann v. Sec'y of Health and Human Servs.,* 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada,* 167 F.3d at 773.

## II. Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity ("RFC") based on a series of charts provided in the regulations at 20 C.F.R. Part 404. Subpart P,

Appendix 2 (the "Grids"). *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari,* 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since the date of the alleged disability onset, September 28, 1996 (T.13). In reviewing plaintiff's medical records, the ALJ found that plaintiff suffers from a medically determinable condition that significantly limits his ability to perform basic work activity and thus suffers from a "severe" impairment for purposes of the regulations (T. 13). The ALJ further concluded, however, that plaintiff's impairments, individually or in combination, did not meet or equal the requirements of the Listings (T. 14). Proceeding to the fourth step of the sequential evaluation process, based on the medical record and plaintiff's subjective complaints, the ALJ found that plaintiff has the RFC to perform a slightly limited range of light work and a wide range of sedentary work (T. 22). She found that plaintiff was able to lift twenty pounds occasionally and ten pounds frequently, could only occasionally stoop, crouch, kneel, and climb stairs, and could not work in an environment with excessive noise (T. 15). Plaintiff's past relevant work as a machine tender was performed at a "medium" exertional level, but could be performed at a "light" or "sedentary" level and would not be precluded by his physical limitations (T. 20). Additionally, the ALJ relied on the testimony of a vocational expert ("VE"), who testified at plaintiff's prior hearing that plaintiff could perform various jobs in the local economy,

5

including assembler, courier, and parking lot attendant (T. 20). Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act at any time since the alleged onset of his disability (T. 20).

The Commissioner contends that the ALJ's findings are supported by substantial evidence. Plaintiff contends that the ALJ misapplied the established legal and regulatory standards in failing to find that plaintiff suffered from a vertebrogenic disorder, improperly discrediting plaintiff's allegations of pain, and committing other errors, including failing to develop the record, distorting the opinion of plaintiff's physician, and relying on vocational testimony from the prior hearing.

## III.   The Medical Evidence

Plaintiff has suffered from low back pain dating from a work-related injury in 1993 (T. 156). On May 30, 1996, plaintiff was examined by Dr. Edward Simmons, an orthopedic specialist, and complained of pain in the upper mid-lumbar spine with radiating pain into the right thigh (T. 165). Neurologic examination revealed full motor power in all muscle groups. Dr. Simmons noted that plaintiff had a "marked amount of thoracic kyphosis with endplate irregularity and wedging" (T. 166). Kyphosis measured 71 degrees from T4 to T12 (T. 166). Plaintiff also had a compensatory hyperlordosis of the lumbar spine, measuring 64 degrees from L1 to S1 (T. 166).[3] Dr. Simmons recommended spinal fusion surgery (T. 166), but plaintiff did not have medical insurance and attempted to manage his

---

[3] Kyphosis and lordosis are curvatures of the spine. Kyphosis is a backward convexity, while lordosis is a frontward convexity.

pain with exercise (T. 164). An MRI scan of plaintiff's lumbar spine indicated some loss of signal intensity at L3-4, L4-5, and L5-S1 (T. 166).[4]

Plaintiff underwent physical therapy to address his back pain. In April 1997, he was evaluated and found to have a thoracolumbar active range of motion within normal limits (T. 179). The physical therapist also found plaintiff's lower extremity motor function within normal limits, although there was decreased light touch sensation of the left lateral thigh, calf, and foot. *Id.* Plaintiff's treatment plan included two sessions per week, ice, moist heat, and home exercise to resolve his mechanical dysfunction (T. 180). After six visits, it was noted that plaintiff's pain was reduced, his lumbar mechanical dysfunction was corrected, and he was discharged to a home exercise program (T. 185).

On October 16, 1997, plaintiff again saw Dr. Simmons, complaining of continued thoracolumbar pain. He stood with a marked kyphosis with a compensatory hyperlordosis through the lumbar spine. Dr. Simmons noted that the spinal fusion procedure was denied by plaintiff's insurance carrier (T. 163).

Plaintiff underwent additional physical therapy starting in December 1997. Lumbar movement was within normal limits, as was active thoracic rotation, lower extremity range of motion, and strength for lower extremities (T. 216). While there was decreased sensation in the right lateral thigh, patellar tendon and Achilles tendon reflexes were normal. *Id.*

---

[4] Loss of signal intensity indicates disk degeneration. *See* P. Beattie. *The relationship between symptoms and abnormal magnetic resonance images of lumbar intervertebral disks*, 76 Physical Therapy, 601-608 (1996).

On December 4, 1997, Dr. Simmons noted continued thoracolumbar pain and increased lower thoracic kyphosis (T. 162). Dr. Simmons prescribed pain medication and stabilization exercises (T. 162). On March 5, 1998, Dr. Simmons stated that plaintiff had pain in his upper lumbar region radiating into both flanks. Dr. Simmons prescribed a soft lumbosacral corset and stated that plaintiff was unable to work and "totally disabled" (T. 161).

On February 4, 1998, Dr. David Kowalski, a consultative physician for the New York State Office of Temporary and Disability Assistance, found that plaintiff suffered from "[l]ow back pain with strong reduction in lumbar range of motion, but otherwise no severe loss of function . . ." (T. 158.) Lumbar spine showed reduced lateral flexion to 20 degrees both right and left, forward flexion to 15 degrees, and backward extension of 5 degrees (T. 157). Plaintiff had complete range of motion of his shoulders, elbows, wrists, knees, hips, ankles, and cervical spine. *Id.* There was no evidence of atrophy of any muscle group (T. 158). Plaintiff's fine and gross motor movements were normal. *Id.*

In a physical residual functional capacity assessment dated March 3, 1998, Dr. Cheryl Nohejl determined that plaintiff could occasionally lift 25 pounds, frequently lift 10 pounds, sit, stand, or walk about 6 hours in an 8-hour workday, and was limited in his ability to push, pull, climb, balance, stoop, kneel, crouch, and crawl (T. 168-69). This assessment was affirmed by Dr. Verna Yu on April 29, 1998 (T. 174).

In August 1998, Dr. Simmons reported that plaintiff stood with an increased amount of thoracolumbar kyphosis and was tender on palpation over the T9 through L2 region (T. 272). Neurologic exam of plaintiff's lower extremities was normal. *Id.*

In December 1998, plaintiff's physical therapist noted that plaintiff's lumbar range of motion was within normal limits (T. 202). Plaintiff reported occasional numbness in his right thigh, but no further muscle spasms. *Id.* Plaintiff's symptoms were less frequent and less intense. *Id.*

On March 18, 1999, Dr. Simmons stated that plaintiff continued to have pain in his mid-lumbar and lower thoracic region, but was attempting to manage it (T. 279). Plaintiff also complained of shoulder pain. *Id.* Dr. Simmons stated that plaintiff remained totally disabled. *Id.*

In April 1999, plaintiff was diagnosed with bi-lateral rotator cuff tendinitis (T. 286). Additionally, in May 1995, plaintiff was diagnosed with a binaural hearing loss of 15.6 percent.

**IV.    Other Evidence**

At the hearing, plaintiff testified that he worked at General Motors as a tool setter until November 1993 (T. 34). He has a tenth-grade education and a low level of reading ability (T. 40). Plaintiff testified that he has constant back pain that wakes him from sleep approximately four times per week (T. 48). He does very little household work (T. 50-51). Plaintiff stated that he goes to physical therapy two times per week (T. 51). He can walk for about 20 minutes, and his ability to stand is affected by the back pain (T. 51). Plaintiff can do very little bending or lifting (T. 52). He visits with family, talks on the telephone (T. 52), and watches television (T. 53). Approximately one year prior to the hearing, plaintiff suffered two broken ribs when his car, which had been jacked up for repair, fell on him (T. 56). At the hearing, plaintiff was able to lift his arms to shoulder level and could raise them

above his shoulder with pain (T. 57).  He explained that he receives cortisone shots for rotator cuff pain (T. 57-58).  Plaintiff stated that he could sit less than four hours in a workday, stand for 20 minutes, and can lift a gallon of milk but not hold it for any length of time (T. 65-66).

## V.     Plaintiff's Injury

Plaintiff contends that his injury meets the criteria in the Listings for a vertebrogenic injury, and thus the ALJ erred in concluding that he is not disabled.  According to the Listing in effect at the time of the decision, a claimant alleging disability by reason of a vertebrogenic disorder must show that the impairment resulted in the following symptoms persisting for at least 3 months despite prescribed therapy and expecting to last 12 months:

1.  Pain, muscle spasm, and significant limitation of motion in the spine; and

2.  Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Part 404, Subpart P, Appendix 1, §1.05(C) (2001). The Commissioner contends that while plaintiff reported limitations in range of motion and spasms, the limitations are not significant, and there is no evidence of radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Plaintiff has presented evidence of pain, spasm, and limitation of motion in his spine.  He has also presented evidence of sensory loss in the form of "decreased light touch sensation of the left lateral thigh, calf and foot" (T. 179).   However, the record is devoid of evidence of radicular distribution of significant motor loss or reflex loss.  In fact, the record indicates that plaintiff suffered no loss of motor function, and reflexes are

normal. In April 1997, plaintiff was evaluated for physical therapy, and a neurological screen of lower extremity motor function was within normal limits (T. 179). In December 1997, lower extremity range of motion, strength tests for lower extremities, and patellar and Achilles tendon reflexes were normal (T. 216). In August 1998, a neurologic examination of plaintiff's lower extremities was also normal (T. 272). Accordingly, plaintiff did not meet the criteria for the Listing for a vertebrogenic disorder in effect at the time of the hearing, and the ALJ did not err at the third step of the sequential analysis.

### VI.     The Treating Physician's Opinion

Plaintiff contends that the ALJ erred in misinterpreting the opinion of plaintiff's treating physician, Dr. Simmons, who repeatedly stated that plaintiff was totally disabled and unable to work. The ALJ found that Dr. Simmons based his opinion on plaintiff's subjective complaints of pain, and determined that Dr. Simmons' opinion related only to plaintiff's disability status under the New York State Workers' Compensation Law and not the Social Security Act (T. 18). The ALJ found it "more probable that the doctor was referring solely to an inability to perform the claimant's past work as he performed it . . . ." *Id.*

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). However, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); see 20 C.F.R. § 416.927(e)(1). "That means that the Social Security Administration considers the

data that physicians provide but draws its own conclusions . . . ." *Snell*, 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. *Id.*

While "[t]reating source opinions on issues reserved to the Commissioner will never be given controlling weight," the regulations provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. SSR 96-5p.  For treating sources, the regulations also require that the Social Security Administration make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are ambiguous. *Hinds v. Barnhart*, 2005 WL 1342766, *9 (E.D.N.Y. April 18, 2005) (citing SSR 96-5p).  If the record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.  *Id.*

Here, the ALJ rejected Dr. Simmons' opinion that plaintiff is totally disabled.  While this is an issue reserved to the Commissioner and Dr. Simmons' conclusion is not determinative, the ALJ was nonetheless obligated to consider the opinion in her determination.  Here, the ALJ rejected Dr. Simmons' opinion on the basis of conjecture, having assumed that Dr. Simmons found plaintiff unable to work for Workers' Compensation purposes only.  In these circumstances, the ALJ had a duty to develop the record and resolve the ambiguity.  The requirement that an ALJ clarify a treating source's opinion that a claimant is unable to work is part of the ALJ's affirmative obligation to develop a claimant's medical history.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("'[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ

bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly'" (quoting *Hartnett v. Apfel*, 21 F.Supp.2d 217, 221 (E.D.N.Y. 1998)); *see also Foster v. Callahan*, 1998 WL 106231, at * 5 (N.D.N.Y. March 3, 1998) ("An ALJ should make *every reasonable effort* to obtain treating source evidence, and if the treating source provides an incomplete report, the ALJ must *request the necessary additional information from the treating source*.") (internal quotations omitted); 20 C.F.R. § 404.1512(e)(1) (providing that the Social Security Administration "will seek additional evidence or clarification from [a] medical source when the report from [the] medical source contains a conflict or ambiguity that must be resolved").  As the ALJ rejected the opinion of the treating physician without fully developing the record, a remand is necessary.  On remand, the ALJ should recontact Dr. Simmons to obtain a more definitive opinion from him regarding plaintiff's ability to perform basic work activities.  *See Willoughby v. Commissioner of Social Security,* 332 F. Supp.2d 542, 550 (W.D.N.Y. 2004).

**VII.   Plaintiff's Allegations of Pain**

Plaintiff contends that the ALJ erred in discrediting Plaintiff's allegations of pain. The ALJ concluded that the "objective findings . . . fail to provide strong support" for plaintiff's allegations of disabling symptoms and limitations (T. 15).  She found plaintiff's description of his symptoms to be "inconsistent and unpersuasive" and "vague and general" (T. 16).    In evaluating subjective allegations of pain, the ALJ must assess whether medical evidence shows "the existence of a medical impairment . . . which could

reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).  If there is "conflicting evidence about a [plaintiff's] pain, the ALJ must make credibility findings."  *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).  When the alleged symptoms suggest greater severity of impairment than the objective medical evidence alone, the ALJ considers all the evidence submitted, and considers "the extent to which there are any conflicts between your statements and the rest of the evidence."  20 C.F.R. § 404.1259(c)(4).  The ALJ will also consider other factors, such as daily activities, the location, duration, frequency, and intensity of symptoms, the type, effectiveness, and side effects of medication, and other treatment or measures to relieve those symptoms.  *See* 20 C.F.R. § 416.929(c)(3); SSR 96-7p.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p. Therefore, "[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal quotation marks, citation omitted); *see Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y.1987).

Here, the ALJ's credibility determination is not supported by substantial evidence in the record.  The medical record shows "the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged."  42 U.S.C. § 423(d)(5)(A).  However, the ALJ found that the objective medical findings did not support plaintiff's allegations of disabling pain.  In resolving this conflict, the ALJ considered other

factors, such as plaintiff's daily activities, and found that plaintiff was able to drive and had worked on his truck.  In fact, plaintiff testified that his son worked on the truck, but that he climbed under the truck to point something out to his son.  There was no testimony that plaintiff spent any length of time on his back working underneath the truck, and to reject plaintiff's allegations of pain for this reason was error.  Additionally, the fact that plaintiff was able to drive himself to physical therapy appointments is not evidence that he is capable of working.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (daily activities may be used to show that a claimant can work, but only insofar as there is evidence that the claimant engaged in the activities for "sustained periods comparable to those required to hold a job").

Additionally, the ALJ found that while plaintiff stated that he did a minimal amount of household work and relied on his wife and step-daughter, plaintiff had been unmarried and lived alone for part of the insured period.  In this regard, the ALJ did not ask plaintiff how he managed his household chores prior to his marriage.  There was simply no testimony regarding daily activities prior to the marriage, and nothing upon which the ALJ could have rejected plaintiff's testimony that he did minimal household chores.  The ALJ also found that plaintiff's course of treatment was conservative, consisting of pain medication and physical therapy, but failed to note that Dr. Simmons had recommended surgery which was not done because plaintiff did not have insurance coverage.  Finally, the ALJ recognized plaintiff's long work record, but noted that he did not stop working due to his disability (T. 17).  A good work record entitles a claimant to "substantial credibility." See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983); Iuteri v. Barnhart, 2004 WL

1660580, *13 (D.Conn. March 26, 2004). The reason that plaintiff stopped working in 1993 is of minimal relevance to a finding of disability five years later.

On remand, therefore, the ALJ's assessment of plaintiff's credibility should be based on accurate depictions of the representations made by plaintiff and on a full evidentiary record, supplemented by further fact-gathering as needed.

**VIII.   Plaintiff's Residual Functional Capacity**

Plaintiff contends that the ALJ failed properly to assess his RFC when she found that he was able to perform a wide range of sedentary work and a slightly limited range of light work. Specifically, the ALJ found that plaintiff could lift 20 pounds occasionally and ten pounds frequently; was limited in his ability to stoop, crouch, kneel, and climb stairs more than occasionally; and was unable to work in an area of exposure to excessive noise (T. 15). Thus, she found that plaintiff could do some light work and most sedentary work.

An RFC assessment is based on relevant medical and other evidence, and measures an "individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week." 20 C.F.R. 404.1545(a)(1), (a)(3). Because the Social Security Act is remedial, and thus broadly construed and liberally applied, the Commissioner must make a thorough inquiry into the objective medical facts, diagnoses, or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir.1983).

"Sedentary" work is defined as:

> involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). "Light" work is defined as:

> involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

Here, the record indicates that plaintiff suffers from a structural deformity of his spine (hyperkyphosis and hyperlordosis) with disk degeneration at L3-4, L4-5, and L5-S1 (T. 166). He complains of constant and debilitating back pain. In February 1998, he had full range of motion in the cervical spine but limitation of movement in the lumbar spine (T. 157). He also experienced pain while raising his legs (T. 158). The state review physicians found that plaintiff could lift 25 pounds occasionally, 10 pounds frequently, stand, walk, and sit about six hours in an eight-hour workday with limitations for pushing and pulling with the lower extremities, climbing, balancing, stooping, kneeling, crouching, and crawling (T. 167-174).

The ALJ concluded that plaintiff could do some light work and most sedentary work. While the ALJ noted that the state review physician's RFC assessment is identical to her findings, she stated that she gave only minimal consideration to this assessment and relied on the other evidence in the record. There are no other RFC assessments in the record,

and the only other medical opinion of plaintiff's capacity for work is Dr. Simmons' repeated assessments that plaintiff is totally disabled and unable to work. As stated above, the ALJ is obligated to clarify Dr. Simmons' opinion of plaintiff's ability to perform basic work activities. Additionally, the ALJ's assessment of plaintiff's credibility is flawed. The evidence indicates that plaintiff suffers from disk degeneration, back pain, and curvature, and limitations in mobility. Accordingly, the court finds that the ALJ's determination of plaintiff's RFC is unsupported by substantial evidence. Upon remand, the ALJ must determine the plaintiff's RFC based on the entire record.

## IX.   Development of the Record on Vocational Training

Plaintiff contends that the ALJ erred in failing to obtain vocational assessment records. The record indicates that plaintiff sought vocational training, but his vocational counselor determined that due to plaintiff's "academic deficits and physical problems," it would be "difficult and time-consuming for Mr. Lilly to be rehabilitated into a light-duty position" (T. 288). Plaintiff seems to argue, based on this statement of a vocational counselor, that he has intellectual impairments that prevent him from working, and that the ALJ was under an obligation to develop the record in this regard.

At the time of the hearing, plaintiff did not claim disability based upon a mental impairment. He does not contend that he has borderline intellectual capacity or suffers from some mental impairment that arose after he stopped working. The ALJ was aware that plaintiff had a tenth-grade education and a low level of reading ability, but did not accept plaintiff's contention that he is functionally illiterate (T. 20-21). The ALJ considered plaintiff's educational deficits when determining plaintiff's RFC, and was under no further

obligation to develop the record. Accordingly, the ALJ did not err in failing to obtain vocational assessment records.

## X.     The Vocational Testimony

Finally, plaintiff contends that the ALJ erred in relying on vocational testimony from the previous hearing that occurred three years earlier. While plaintiff had the opportunity to cross-examine the VE during the first hearing, he had no opportunity to question the VE based on the evidence adduced in the later hearing. The ALJ did not indicate her intent to rely upon this earlier testimony either before or at the time of the hearing.

Social Security claimants are entitled to a reasonable opportunity for a fair hearing, and the Commissioner's decision must be based upon evidence adduced at the hearing. *Gullo v. Califano,* 609 F.2d 649, 650 (2d Cir. 1979); 42 U.S.C. § 405. The reliance by the ALJ on post-hearing reports, prepared either by medical or vocational experts, without the opportunity for a claimant to cross-examine the expert and present rebuttal evidence, has been held to violate the claimant's right to due process. *See Townley v. Heckler,* 748 F.2d 109, 114 (2d Cir. 1984) (error to admit post-hearing report of vocational expert without cross examination); *Cohen v. Chater,* 1997 WL 327412 (E.D.N.Y. June 9, 1997) (error in ALJ's failure to allow rebuttal of post-hearing medical report).

Here, the reliance by the ALJ upon three-year-old vocational testimony, without giving the plaintiff an opportunity to cross-examine the expert on the current record, was error. The court has not found, and the Commissioner has not pointed to, any authority that would excuse the failure to provide the opportunity for cross-examination. If, upon remand, the ALJ finds it necessary to take vocational testimony, the plaintiff must be given

an opportunity to cross- examine the vocational expert and suggest hypothetical questions based on the evidence adduced at the later hearing.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 16) is denied, and plaintiff's cross-motion (Item 22) is granted. This case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: Oct. 20 , 2005
p:\opinions\01-329.aug0205